IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GREAT LAKES INSURANCE SE,<br><br>    *Plaintiff*,<br><br>v.<br><br>1. BANK OF EUFAULA, an Oklahoma Bank,<br>2. SNB BANCSHARES, INC., an Oklahoma Corporation,<br>3. JULIE HUFF, and,<br>4. TERRY WADE HUFF,<br>    *Defendants*, | Case No. CIV-18-055-RAW |

# **ORDER**[1]

Defendants to this action, Julie Huff and Terry Wade Huff, filed a lawsuit in the District Court of Muskogee County, Oklahoma against the Bank of Eufaula and SNB Bancshares, Inc. (hereinafter collectively referred to as the "Bank"). The Bank is insured under a Policy issued by Great Lakes Insurance SE (hereinafter "Great Lakes"). Great Lakes brought this action seeking a declaratory judgment that it has no duty to defend or indemnify the Bank against the Huffs' claims under the Policy. Now before the court are cross motions for summary judgment filed by Great Lakes [Docket No. 35] and the Bank [Docket No. 37].

## I. STANDARD OF REVIEW

The court will grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[1] For clarity and consistency herein, when the court cites to the record, it uses the pagination assigned by CM/ECF.

R. Civ. P. 56(a). The court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In applying the summary judgment standard, the court views the evidence and draws reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). At this stage, however, Plaintiff may not rely on mere allegations, but must have set forth, by affidavit or other evidence, specific facts in support of the Complaint. *Id.*

"Conclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment." *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (citation omitted).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). While at the summary judgment stage evidence need not be submitted in a form that would be admissible at trial, the substance of the evidence must be admissible.

## II. UNDISPUTED MATERIAL FACTS

### *Underlying Action*

In the state court action, the Huffs allege that on January 21, 2016, while Julie Huff was a business invitee at the Bank, an armed robber entered the Bank. He shot and killed the Bank's president and then shot a teller who resisted his demand for money. He then took Mrs. Huff

2

hostage at gunpoint. The robber ordered Mrs. Huff to drive him in a stolen vehicle and forced her to take him several miles as he sat in the passenger seat with a gun pointed at her.

Law enforcement chasing the stolen vehicle were informed that Mrs. Huff was a hostage. After law enforcement stopped the vehicle, Mrs. Huff ran, but the robber caught up to her, put his arm around her neck and used her as a human shield. Law enforcement and the robber exchanged fire, during which law enforcement bullets struck Mrs. Huff approximately nine (9) times.

The Huffs allege that the Bank owed a duty to Mrs. Huff as a business invitee, that it failed to follow industry standards to protect its customers from such a foreseeable situation, and that its failures, negligence, and reckless disregard for her rights caused her injuries. The Huffs seek compensation for, *inter alia*, Mrs. Huff's bodily injuries and emotional distress.[2]

After the Huffs filed their state court lawsuit, the Bank demanded that Great Lakes indemnify and defend it against the Huffs' claims. Great Lakes is presently defending the Bank in the state court litigation under a reservation of rights.

***The Policy***

The Policy at issue is an occurrence policy that was in effect from March 6, 2015 to March 6, 2016.[3] The Policy provides in pertinent part:

COVERAGE A BODYILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement.

---

[2] In addition to emotional distress from what happened to her, Mrs. Huff claims she suffered emotional distress from witnessing the shootings of the Bank president and teller.
[3] The Policy, referenced by both parties, is attached as Exhibit 2 to Great Lakes' motion for summary judgment. It is an occurrence policy. Docket No. 35-2 at 35.

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

* * *

b. This insurance applies to "bodily injury" and "property damage" only if:
   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
   (2) The "bodily injury" or "property damage" *occurs during the policy period*.

Docket No. 35-2 at 35 (emphasis added).

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 44. The Policy also contains the following Endorsement that amends one of the Policy's exclusions:

2. EXCLUSION – EXPECTED OR INTENDED INJURY AND ASSAULT OR BATTERY

   Exclusion a. of Coverage A (section I) is deleted and replaced with the following:

   "Bodily injury" or "property damage":

   (1) expected or intended from the standpoint of any insured;
   (2) arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery; or
   (3) arising out of charges or allegations of negligent hiring, training, placement or supervision with respect to (1) or (2) above.

*Id*. at 46. This exclusion was in effect on the day Mrs. Huff was taken hostage and shot and is a main point of contention in the instant motions.

The Policy also excludes punitive damages as follows:

3. EXLCUSION – PUNITIVE DAMAGES

   This insurance does not apply to any claim or indemnification for punitive or exemplary damages. If a suit seeking both compensatory and punitive or exemplary damages has been brought against you for a claim covered by this policy, we will

4

>provide defense for such action. We will not have any obligation to pay for any costs, interests or damages attributable to punitive or exemplary damages.

*Id*.

## III. ANALYSIS

Great Lakes argues that: (1) the Huffs' damages were not caused by an "occurrence" as that term is defined in the Policy; (2) the Huffs' claims are not covered under the Policy, as their damages were caused by an assault, a battery, and/or actions taken to prevent or suppress an assault or battery; and (3) the Policy does not provide coverage for any punitive damages. The Bank argues that the assault or battery exclusion is ambiguous and that it reasonably expected the Policy to provide coverage for harms suffered by its business invitees. The Bank concedes that the Policy does not provide coverage for punitive damages. Docket No. 36 at 26.

Under Oklahoma law, "[t]he same principles generally apply to the construction of a policy of insurance as apply to any adhesion contract." *Redcorn v. State Farm Fire & Cas. Co*., 55 P.3d 1017, 1019 (Okla. 2002) (citation omitted). Parties are "bound by the terms of the contract; and courts will not rewrite those terms. The construction of a policy should be natural and reasonable, viewed in the light of common sense. The result should not be absurd." *Id*.

The court's first step is to "determine as a matter of law whether the policy language at issue is ambiguous." *MTI, Inc. v. Employers Ins. Co. of Wausau*, 913 F.3d 1245, 1249 (10th Cir. 2019). "A provision is ambiguous if it is facially susceptible to two interpretations, considered from the standpoint of a reasonably prudent layperson." *Id*. If the language is not ambiguous, the court accepts the language in its plain, ordinary and popular sense." *Id*. If the language is ambiguous, the court will "apply well-settled rules of construction to determine the meaning of the ambiguous language." *Id.* at 1250. Specifically, the court will "construe the policy to give a

reasonable effect to all of its provisions, and . . . liberally construe words of inclusion in favor of the insured and strictly construe words of exclusion against the insurer." *Id.*

### *Occurrence*

The Policy defines "occurrence" as an "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Docket No. 35-2 at 44. The Policy does not define "accident." Under Oklahoma law, the term "accident" when used in an insurance policy is "to be construed and considered according to common speech and common usage of people generally." *United States Fid. & Guar. Co. v. Briscoe*, 239 P.2d 754, 756-57 (Okla. 1951). An intentional act is not an accident.

The injuries to the Huffs at issue in the state court action were caused by the bank robber shooting and killing the Bank president, shooting the Bank teller, taking Mrs. Huff hostage at gunpoint, and using her as a human shield.[4] These were all acts that constitute battery. "Acts that are intended to and do, in fact, cause offensive contact constitute the intentional tort of battery and are not 'an accident'." *Sphere Drake Ins. P.L.C. v. D'Errico*, 4 Fed.Appx. 660, 662-63 (10th Cir. 2001) (citing *Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1297 (10th Cir. 1996)). Mrs. Huff's injuries were not caused by an "occurrence" under the Policy. Accordingly, Great Lakes has no duty to defend or indemnify the Bank.

### *Assault or Battery Exclusion*

The Policy excludes coverage for "bodily injury" or "property damage":

(1) expected or intended from the standpoint of any insured;

---

[4] The Bank also argues that the law enforcement officers shot Mrs. Huff accidentally during the gunfight. While the law enforcement officers no doubt hoped they would not hit Mrs. Huff, they intentionally shot at her as a result of the bank robber shooting at them and using her as a human shield. None of these acts were "accidental."

> (2) arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery; or
> (3) arising out of charges or allegations of negligent hiring, training, placement or supervision with respect to (1) or (2) above.

Docket No. 35-2 at 46. Under Oklahoma law, when interpreting an "assault" or "battery" exclusion, the court looks to the definitions set out in the Restatement (Second) of Torts. *Brown v. Ford*, 905 P.2d 223, 229, n.34 (Okla. 1995) (*overruled on other grounds by Smith v. Pioneer Masonry, Inc.* 226 P.3d 687, 689 (Okla. 2009)).

Thereunder, a person is liable for "battery" if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) a harmful contact with the person of the other directly or indirectly results." RESTATEMENT (SECOND) OF TORTS § 13. A person is liable for "assault if: "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person, or imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." RESTATEMENT (SECOND) OF TORTS § 21.

The "assault" or "battery" exclusion is not ambiguous on its face. The Bank argues, however, that it is ambiguous because it "fails to distinguish and determine what, if any, effect the intentional or negligent nature of an act has on its terms." The Bank argues further that "[w]here intentionality is not present in the acts resulting in Ms. Huff's injuries, this ambiguity should be construed in favor of the insured Bank." The court does not agree that there is any ambiguity. The Policy clearly excludes coverage for any claims "arising out of assault or battery, or out of any act or omission in connection with assault or battery, or with the prevention or suppression of an assault or battery" and any claims "arising out of charges or allegations of negligent hiring, training, placement or supervision with respect [thereto]."

7

Mrs. Huff's injuries clearly were caused by the intentional battery by the bank robber and by the intentional acts of law enforcement trying to prevent or suppress the bank robber from further intentional battery. To the extent that the Bank could be found negligent for not hiring enough security to prevent such an event, that is also excluded. To the extent that the Bank could also be found negligent for having too many entrances, that does not change the fact that Mrs. Huff's injuries were caused by an assault and battery, coverage for which is excluded under the Policy. Accordingly, as the Policy excludes coverage for the Huffs' claims, Great Lakes has no duty to defend or indemnify the Bank.

**IV.  CONCLUSION**

Great Lake's motion [Docket No. 35] is hereby GRANTED. The Bank's motion [Docket No. 37] is hereby DENIED.

**IT IS SO ORDERED** this 5th day of August, 2019.

_____
Ronald A. White
United States District Judge
Eastern District of Oklahoma